IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHERNARD WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )   No. 2:17-cv-02269 |
| | ) |
| CHRISTOPHER BROWN and | ) |
| WILLIAM SMITH, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

This is a § 1983 case asserting a claim of excessive force by City of Memphis police officers. Before the Court is Christopher Brown and William Smith's (collectively, "Defendants") May 20, 2020 Motion for Summary Judgment. (ECF No. 54.) Plaintiff Shernard Wallace responded on June 15, 2020. (ECF No. 57.) Defendants replied on June 29, 2020. (ECF Nos. 58-59.)

For the following reasons, the Motion for Summary Judgment is DENIED.

**I.   Background**

Around 10:00 p.m. on May 4, 2016, Defendants, City of Memphis police officers, observed a vehicle with a front headlight out in downtown Memphis, Tennessee. (ECF No. 54-2

¶¶ 1-2.)   Wallace was in the driver's seat.   (Id. ¶ 3.)
Defendant Smith approached the vehicle to advise Wallace about
the headlight.   (Id.)   Wallace opened the driver's side door,
and Smith observed in the door compartment a plastic bag that
appeared to contain narcotics.   (Id. ¶ 4.)  Wallace grabbed the
plastic bag, left the vehicle, and started running away.   (Id.
¶¶ 5-6.)   Smith gave chase on foot.   (Id. ¶ 7.)   Wallace ran
through a parking lot, tried to jump over a gate, and fell 20-
25 feet.   (Id. ¶ 8.)   Wallace continued running, leaving the
plastic bag behind.   (Id. ¶¶ 8-9.)   Defendant Brown caught up
to Wallace on foot and ordered Wallace to stop.   (Id. ¶ 11.)

The parties dispute some of what happened next.   Wallace
contends that he "complied with Officer C. Brown's instruction
by stopping, lifting both of my hands in the air above my
head[,] and surrender[ing] to his command."  (ECF No. 57 at 9.)
Wallace contends that Brown then struck Wallace in the face
several times with his fist and put Wallace in a headlock.
(Id.)   Smith, who by that time had caught up to Wallace and
Brown, punched Wallace in the side and back and placed him in
handcuffs.   (Id.)   Both Brown and Smith then struck Wallace
several more times before placing him in their squad car.
(Id.)

Defendants contend that, when Brown caught up to Wallace,
Brown ordered Wallace to get on the ground.   (ECF No. 54-2

2

¶ 13.)   Wallace refused to comply.   (Id.)   Brown then hit
Wallace several times with his fist, put Wallace in a headlock,
and tackled him to the ground.   (Id. ¶¶ 13-14.)   Once Wallace
was on the ground, Brown and Smith arrested Wallace.   (Id.
¶ 15.)   Defendants do not admit that they struck Wallace after
he had been placed in handcuffs.   (See id.)

The parties agree that, after Wallace had been arrested,
Smith retrieved the plastic bag Wallace had dropped.   (Id.
¶ 16.)   The substance in the bag was cocaine.   (Id. ¶¶ 16-17.)
Wallace was transported to Regional One Hospital and then to
the Shelby County Criminal Justice Complex at 201 Popular
Avenue, Memphis, Tennessee.   (Id. ¶ 18.)   Wallace was charged
by the State of Tennessee with possession of cocaine with
intent to manufacture, deliver or sell; evading arrest; and
resisting official detention.   (Id. ¶ 19.)   Wallace pled guilty
to a lesser-included charge of simple possession of cocaine and
was sentenced to eleven months and twenty-nine days in jail.
(Id. ¶ 20.)

In April 2017, Wallace filed a pro se Complaint against
Brown, Smith, and several other defendants, alleging causes of
action under 42 U.S.C. § 1983.   (ECF No. 1.)   In August 2017,
Wallace filed an Amended Complaint.   (ECF No. 7.)   In December
2017, the Court dismissed the Amended Complaint, but granted
leave to amend.   (ECF No. 10.)   In January 2018, Wallace filed

a Second Amended Complaint.  (ECF No. 12.)  In April 2018, the
Court  dismissed  most  of  the  claims  in  the  Second  Amended
Complaint,  but  held  that  Wallace  had  plausibly  stated  an
excessive force claim against Brown and Smith.  (See ECF No. 15
at 4.)

On May 20, 2020, Defendants filed the Motion for Summary
Judgment, a memorandum in support, a Statement of Undisputed
Material Facts, and declarations from Brown and Smith.  (ECF
Nos.  54,  54-1,  54-2,  54-3,  54-4.)   Defendants  argue  that
summary  judgment  is  appropriate  because  they  did  not  use
excessive force during their encounter with Wallace.  (See ECF
No. 54-1 at 8-10.)  In the alternative, Defendants argue that
summary judgment is appropriate because, even if they did use
excessive force, they are entitled to qualified immunity.  (See
id. at 11.)

On  June  15,  2020,  Wallace  responded  to  the  Motion  for
Summary Judgment.  (ECF No. 57.)  In his response, Wallace
included a memorandum in opposition, a Statement of Additional
Disputed Facts, and a declaration.  (Id.)  Wallace did not file
a  response  to  Defendants'  Statement  of  Undisputed  Material
Facts.

## II.  Jurisdiction

The  Court  has  federal  question  jurisdiction.   Under  28
U.S.C. § 1331, district courts have original jurisdiction "of

all civil actions arising under the Constitution, laws, or treaties of the United States." Wallace asserts a claim against Defendants under 42 U.S.C. § 1983. That claim arises under the laws of the United States.

## III. Standard of Review

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quotation marks omitted). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to

5

the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The nonmovant must identify specific evidence in the record sufficient to establish a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1); Hanson v. Madison Cty. Det. Ctr., 736 F. App'x 521, 527 (6th Cir. 2018).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

**B.  Section 1983 and Qualified Immunity**

Under 42 U.S.C. § 1983, state officials are liable for damages if they deprive anyone of his constitutional or statutory rights. See Kaminski v. Coulter, 865 F.3d 339, 345 (6th Cir. 2017). State officials can assert a defense of qualified immunity. That doctrine protects them from civil liability unless the constitutional or statutory rights were clearly established when the violation occurred. See Messerschmidt v. Millender, 565 U.S. 535, 546 (2012).

6

A two-tiered inquiry governs qualified immunity cases. See Ferris v. City of Cadillac, 726 F. App'x 473, 478 (6th Cir. 2018). "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?" Cahoo v. SAS Analytics Inc., 912 F.3d 887, 897 (6th Cir. 2019) (quoting Seales v. City of Detroit, 724 F. App'x 356, 359 (6th Cir. 2018)). "Second, is the right clearly established?" Id. "[A] Court may address these prongs in either order." Id.

Whether an officer is entitled to qualified immunity is a question of law. See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996). However, when "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998). The first task is to determine the extent to which the record supports the plaintiff's version of events. See Chappell v. City of Cleveland, 585 F.3d 901, 909 (6th Cir. 2009). If the plaintiff offers evidence sufficient to create a genuine dispute of material fact, the Court must decide whether, viewing those disputed facts in the light most favorable to the plaintiff, the officer is nevertheless entitled to qualified immunity. Id. at 907 (noting that qualified immunity is not appropriate if, "viewing the evidence

in the light most favorable to [plaintiff], a constitutional right was violated and that . . . right was clearly established at the time of the violation") (citing <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007)).

## IV.  Analysis

### A.  Defendants' Statement of Undisputed Material Facts

Defendants argue that, because Wallace did not file a response to their Statement of Undisputed Material Facts, the Court should consider the facts Defendants assert to be "admitted by operation of law" for the purpose of deciding the Motion for Summary Judgment. (<u>See</u> ECF No. 59 at 1-3.)

Under the Local Rules of this District, a party opposing a motion for summary judgment "must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed.  Each disputed fact must be supported by specific citation to the record."  LR 56.1(b).  A party's "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment."  <u>Id.</u> 56.1(d).

Pro se litigants such as Wallace are not excused from the requirements of the Federal Rules of Civil Procedure or the

local rules.  See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).  However, pro se litigants are entitled to some leniency in complying with formal procedures.  Cf. Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers"). "[D]istrict courts may liberally construe the federal and local rules for pro se litigants[.]"  Greer v. Home Realty Co. of Memphis Inc., No. 2:07-cv-2639, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010) (quoting Whitfield v. Snyder, 263 F. App'x 518, 521 (7th Cir. 2008)).

Wallace did not file a response to Defendants' Statement of Undisputed Material Facts.  In his unsworn response to the Motion for Summary Judgment, Wallace did not and could not present competent summary judgment evidence contradicting Defendants' asserted facts.  In his declaration, signed under penalty of perjury, Wallace conclusorily states that he "did not resist or threaten the officers in any fashion" during his arrest, but does not make particular factual assertions about Defendants' use of force during his arrest.  (See ECF No. 57 at 2-5.)  In his supporting memorandum, Wallace submits a detailed description of the events of his arrest that conflicts with some of Defendants' asserted facts.  (See id. at 8-11.) Wallace's memorandum is unsworn and is not competent summary judgment evidence.  See Viergutz v. Lucent Techs., Inc., 375 F.

App'x 482, 485 (6th Cir. 2010) (pro se litigants are "obligated at the summary judgment phase to 'identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial'") (quoting Amimi v. Oberlin Coll., 440 F.3d 350, 357 (6th Cir. 2006)); King v. UT Med. Grp., Inc., No. 09-cv-2080, 2011 WL 13269768, at *3 (W.D. Tenn. Mar. 3, 2011) ("The Court cannot consider any factual assertions that are made in legal memoranda or that are not sworn to under penalty of perjury.") (citing Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991)).

Wallace's Second Amended Complaint is verified. (See ECF No. 12 at 1.) Wallace declares under penalty of perjury that the contents of Second Amended Complaint are true and correct, and dates that declaration. (See id.); see also Williams v. Browman, 981 F.2d 901, 904 (6th Cir. 1992) (in 28 U.S.C. § 1746, "[t]he United States Code specifically provides for verification of unsworn complaints, thereby allowing pro se [parties] to controvert sworn affidavits and place into issue material facts").

A "verified complaint [] carries the same weight as would an affidavit for the purposes of summary judgment." El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (citing Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993)). Wallace does not cite the Second Amended Complaint in his opposition to the

Motion for Summary Judgment. "But courts should consider the allegations in a pro se prisoner's verified complaints (which are effectively affidavits) before entering judgment against him, even if the prisoner fails to cite that evidence in response to a motion for summary judgment." Miller v. Jones, 483 F. App'x 202, 203 (6th Cir. 2012). In his Second Amended Complaint, Wallace, under penalty of perjury, submits a detailed description of the events of his arrest that conflicts with some of Defendants' asserted facts. (See ECF No. 12-3 at 1-7.)

Wallace's papers are not always in the correct form. Given his pro se status, the Court will excuse the technical deficiencies in his response to the Motion for Summary Judgment. See LR 1.1(e) ("[T]he Court may deviate from any provision of any Local Rules of this Court, when appropriate for the needs of the case and the administration of justice."). There is competent summary judgment evidence in the record establishing genuine disputes of material fact. The Court considers Defendants' asserted facts to be undisputed except where contradicted by Wallace's factual description of the events of his arrest as set out in the verified Second Amended Complaint.

**B.    Genuine Disputes of Material Fact**

The parties put forward conflicting accounts of Wallace's arrest.  Wallace asserts in the Second Amended Complaint that, after Brown ordered him to stop running, he "complied with Officer C. Brown's instructions by stopping, lifting both of my hands in the air above my head[,] and surrender[ing] to his command"; that Brown struck Wallace in the face several times with his fist and put Wallace in a headlock; that Smith punched Wallace in the side and back and placed him in handcuffs; and that, while Wallace was handcuffed, Brown and Smith struck him several more times before placing him in their squad car.  (ECF No. 12-3 at 1-3.)

Defendants assert that Brown ordered Wallace to get on the ground; that Wallace refused to comply; that Brown hit Wallace several times with his fist, put Wallace in a headlock, and tackled him to the ground; and that, once Wallace was on the ground, Brown and Smith arrested Wallace.  (ECF No. 54-2 ¶¶ 13-15.)  Except for Brown's strikes while taking Wallace to the ground, Defendants do not assert that they hit Wallace before or after he was handcuffed.  (See id.)

Brown and Smith have submitted declarations supporting their factual assertions.  (See ECF No. 54-3; ECF No. 54-4.) In the verified Second Amended Complaint, Wallace has provided support for his factual assertions.  (See ECF No. 12-3 at 1-7.)

12

No other evidence has been submitted by either side.  It does not appear that any depositions were taken in this case.  No other documentary or witness evidence has been offered.

Given the evidence provided, a reasonable juror could believe either Wallace's or Defendants' description of the events of Wallace's arrest.  None of the declarations provided is conclusive evidence of what took place.  "Any credibility determination made between the officers' and [plaintiff's] version of events is inappropriate for summary judgment." Tarver v. City of Edna, 410 F.3d 745, 752-54 (5th Cir. 2005) (affirming in relevant part denial of motion for summary judgment in § 1983 case involving allegation of excessive force); see also Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (where a "district court could resolve [a factual] dispute only by deciding to believe [defendant's] affidavit rather than plaintiffs' affidavits, [] such a credibility determination is inappropriate in ruling on a motion for summary judgment").

Taking the facts in the light most favorable to Wallace, the following is what happened after Brown ordered Wallace to stop running: Wallace stopped and lifted both of his hands in the air; Brown struck Wallace in the face several times with his fist and put Wallace in a headlock; Smith punched Wallace in the side and back and placed him in handcuffs; and, while

Wallace was handcuffed, Brown and Smith struck him several more times.  That is sufficient to avoid summary judgment.

### C.   Qualified Immunity

Qualified immunity will shield Defendants from civil liability under § 1983 unless: (1) they violated one of Wallace's constitutional rights; and (2) that right was clearly established at the time.  See Cahoo, 912 F.3d at 897.

### 1.   Constitutional Right

Wallace contends that Defendants used excessive force while arresting him on August 4, 2016.  (See ECF No. 12-2 at 15-22; ECF No. 12-4 at 9, 19.)  Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. See Graham v. Connor, 490 U.S. 386, 394-95 (1989).  "[W]hether the force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).  Although reasonableness is ultimately based on the totality of the circumstances, three factors guide the analysis: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Id.

14

The reasonableness of the force must be judged from the perspective of a reasonable officer on the scene, not "with the 20/20 vision of hindsight." Id.

When officers use force multiple times, the Sixth Circuit has found it appropriate to divide the incident into segments and to analyze each use of force on its own terms. See Harris v. City of Circleville, 583 F.3d 356, 365 (6th Cir. 2009). Wallace contends that Defendants used excessive force at two distinct points: (1) when subduing Wallace and taking him to the ground, and (2) after Wallace was handcuffed. (See ECF No. 12-3 at 1-3.)

First, Defendants' use of force when subduing Wallace and taking him to the ground. Both parties agree that Wallace initially evaded arrest by running away from Brown and Smith. (See ECF No. 54-2 ¶¶ 5-12; ECF No. 12-3 at 1.) However, in Wallace's telling, he had stopped running, raised both his hands, and surrendered before Brown struck him in the face and put him in a headlock and Smith punched him in the side and back. (See ECF No. 12-3 at 1-3.)

A reasonable jury could find that Defendants' use of force in subduing Wallace and taking him to the ground was excessive. Under the Fourth Amendment, "once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force

15

dissipates." Morrison v. Bd. of Trs. of Green Twp., 583 F.3d 394, 404-05 (6th Cir. 2009). The Sixth Circuit has "held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." Baker v. City of Hamilton, 471 F.3d 601, 607 (6th Cir. 2006) (collecting cases and finding genuine dispute of material fact about whether officer used excessive force when he struck defendant's head and knee after defendant had stopped attempting to evade arrest and had raised his hands in surrender).

Second, Defendants' use of force after Wallace was handcuffed. Provided Wallace was not continuing to resist Defendants, any use of force after he was handcuffed would be excessive. "'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." Morrison, 583 F.3d at 404-07 (finding genuine dispute of material fact about whether officer used excessive force when he pushed defendant's face into the ground while defendant was handcuffed and prone); see also Pigram ex rel. Pigram v. Chaudoin, 199 F. App'x 509, 512-14 (6th Cir. 2006) (finding genuine dispute of material fact about whether officer used excessive force when he slapped handcuffed plaintiff in the face).

Taking the facts in the light most favorable to Wallace, a reasonable jury could find that Defendants' use of force while arresting Wallace was excessive under the Fourth Amendment. Wallace has established genuine disputes of material fact about whether Defendants violated his constitutional rights.

### 2. Clearly Established

For a constitutional right to be clearly established, precedent at the time of the alleged misconduct "must have placed the . . . constitutional question beyond debate." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). That precedent must be a case of "controlling authority or a robust consensus of cases of persuasive authority." Plumhoff v. Rickard, 572 U.S. 765, 780 (2014) (quotation marks and citations omitted). There need not be a case "directly on point," Kisela, 138 S. Ct. at 1152, but the contours of the violated right must have been "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it," Plumhoff, 572 U.S. at 778-79.

Clearly established law may not be defined at a high level of generality. See Kisela, 138 S. Ct. at 1152. Precedent showing that the law was clearly established must be factually specific. See id. at 1152-53. That is especially true in

excessive force cases, where "the result depends very much on the facts of each case." Id. at 1153 (quoting Mullenix v. Luna, 136 S. Ct. 305, 309 (2015) (per curiam)). "[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." Id.

Factually similar controlling precedents that existed at the time of Wallace's arrest squarely govern this case. In Baker, the Sixth Circuit held that an officer violated a defendant's clearly established constitutional right when he struck the defendant on the head and knee with a baton after the defendant had emerged from some bushes "with his hands straight up in the 'surrender' position." 471 F.3d at 607-08. In Baker, as here, the defendant was not handcuffed at the time he surrendered and had previously been evading arrest. See id. The Court held that the officer's strikes to the defendant's head and knee after the defendant had surrendered was a violation of the defendant's clearly established "right to be free from gratuitous strikes to his body." Id. at 608. Under Baker, Defendants' use of force in subduing Wallace and taking him the ground after Wallace had surrendered was a violation of a clearly established constitutional right.

In Morrison, the Sixth Circuit held that an officer violated a defendant's clearly established constitutional right when he pushed the defendant's face into the ground while she

was handcuffed and prone.  583 F.3d at 404-08.  The Court held that it was "obvious" that an officer "could not push a handcuffed detainee's face into the ground when there lacked a genuine threat to the safety of the officers or others."  Id. at 408 (citing Phelps v. Coy, 286 F.3d 295, 301 (6th Cir. 2002)).  Collecting other Sixth Circuit cases, the Court said, "[i]n this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized."  Id. (quoting Alkhateeb v. Charter Twp. of Waterford, 190 F. App'x 443, 452 (6th Cir. 2006)).  Under Morrison, Defendants' use of force in striking Wallace after he had been handcuffed and had ceased to resist was a violation of a clearly established constitutional right.

Taking the facts in the light most favorable to Wallace, Defendants violated Wallace's clearly established Fourth Amendment right to be free from excessive force.  Defendants are not entitled to qualified immunity.  The Motion for Summary Judgment is DENIED.

**V.  Conclusion**

For the foregoing reasons, the Motion for Summary Judgment is DENIED.

So ordered this 23rd day of July, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE